## AFFIDAVIT

I, Thomas Brian Andersen, a Special Agent with Immigration and Customs Enforcement ("ICE"), in Boston, Massachusetts, being duly sworn, depose and state:

1.  I have been employed by ICE as a Special Agent for more than five years and am assigned to the National Security Group of the Boston Office.  I also have law enforcement experience from previous employment as a full time Vermont law enforcement officer for five years, and part time for three years, including more than a year as a detective.  In my current assignment, I am involved *inter alia* in investigations and prosecutions of human rights violators who have unlawfully sought refuge in the United States.  I have received extensive training in enforcement of the immigration laws and have had experience in investigating and arresting individuals who appeared to be in violation of the immigration laws.

2.  Based on my training and experience, I am aware that Title 18, United States Code, Section 1546(a) makes it a crime, among other things, to knowingly make under oath, or knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws and regulations prescribed thereunder, or knowingly present any such document which contains any such false statement.  Having so stated, I submit this affidavit in support of a criminal complaint charging a person named Inocente Orlando

Montano ("Montano") (DOB 1942) with making false statements in an immigration application in violation of 18 U.S.C. § 1546(a).

3. The statements contained in this affidavit are based on my own investigation as well as on information provided to me by others involved in the investigation. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation, but just those facts necessary to show probable cause to believe Montano has violated 18 U.S.C. § 1546(a).

4. This case involves false statements made on an immigration document known as an Application for Temporary Protected Status (TPS Application), also known as a Form I-821. As its name suggests, the purpose of the TPS Application is to allow certain foreigners to seek temporary protection in the United States. Congress has established a procedure by which the Department of Homeland Security ("DHS") may provide temporary protected status ("TPS") to aliens in the United States who are temporarily unable to safely return to their home country because of ongoing armed conflict, the temporary effects of an environmental disaster, or other extraordinary and temporary conditions. The United States Citizenship and Immigration Service ("CIS") is authorized to grant TPS to eligible nationals of certain countries (or parts of countries) who are already in

the United States. Individuals who have TPS are not removable from the United States, may not be detained by DHS, may obtain an employment authorization document, and may apply for travel authorization.

5. Pursuant to the Immigration and Nationality Act and Department of Homeland Security regulations, to be eligible for TPS, an individual must (a) be a national (or in certain circumstances habitual resident) of a country the Secretary of DHS has designated as eligible for TPS; (b) have been continuously physically present in the United States since the effective date of the most recent TPS designation of that country; (c) have continuously resided in the United States since such date as the Secretary of DHS may designate; (d) be admissible as an immigrant and as a recipient of TPS; and (e) register in the time and manner specified by the Secretary. The INA provides, at 8 U.S.C. §1254a(c)(3)(C), that, to maintain TPS, the alien must "register" with the [Secretary of DHS] annually."[1]

6. In the section of the TPS Application captioned "Eligibility standards," the form requires the applicant to answer the following questions and instructs the applicant that "[i]f any of the questions beginning below . . . apply to you,

---

[1] Section 1254(a), which was enacted before the establishment of DHS, requires that an alien receiving TPS register with the Attorney General. Pursuant to regulation, the powers of the Attorney General under that section have been transferred to the Secretary of DHS.

describe the circumstances and include a full explanation on a separate sheet(s) of paper." The questions include the following:

> 2q. Have you EVER . . . served in, been a member of, assisted in, or participated in any military unit, paramilitary unit, police unit . . . ?
>
> 2r. Have you EVER been a member of, assisted in, or participated in any group, unit, or organization of any kind in which you or other persons used any type of weapon against any person or threatened to do so?
>
> 2t. Have you EVER received any type of military, paramilitary, or weapons training?

7.  Questions 2q, 2r, and 2t on the TPS Application are material to the adjudication of the application for TPS because an alien who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion, is ineligible for TPS. The effect of this "persecutor bar" has, since prior to the year 2000, been to disqualify generally, among others, officers of the Salvadoran military who served during the Salvadoran civil war, a conflict between the military government of El Salvador and a coalition of militias, lasting from 1980 to 1992. It is well-documented that during the 1980s, Salvadoran military and paramilitary organizations killed, abducted, or tortured tens of thousands of civilians.

8.  On September 1, 2002, Montano applied to DHS for TPS by submitting a TPS Application. Among other things, Montano answered "no" to the three questions above, and DHS granted Montano TPS. Since one must annually reapply for TPS, Montano has submitted a new TPS on seven different occasions, most recently on August 27, 2010. On each TPS Application he submitted, Montano has answered "no" to questions 2q, 2r, and 2t, thus denying, among other things, that he ever served in the military or even received military training. Applicants must sign their TPS Application and Montano signed each one. Immediately above Montano's signature on each TPS Application he submitted was the following certification:

> I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Copies of documents submitted are exact photocopies of unaltered original documents, and I understand that I may be required to submit original documents to USCIS at a later date. Furthermore, I authorize the release of any information from my records that [USCIS] needs to determine eligibility for the benefits that I am seeking.

9.  In fact, though, each negative answer Montano gave in response to questions 2q, 2r, and 2t on each TPS Application he submitted was a false statement. Based on my investigation, I have probable cause to believe that Montano in fact served in the Armed Forces of El Salvador from 1963 to 1994 and retired as a colonel, and also served, in 1989, as the Public Safety Vice-

Minister while El Salvador's military government was waging civil war. I also have probable cause to believe that Montano received military training at the beginning of his military career.

10. According to information provided to the United States government by the Armed Forces of El Salvador, military records indicate that "Coronel . . . Inocente Orlando Montano" served in the Salvadoran military from February 1, 1963 until January 1, 1994, at which time he retired from the armed forces. Those records also indicate that Montano began his military career as a cadet at the Capitan General Gerardo Barrios Military School.

11. On May 30, 2011, a Spanish court issued an indictment charging 20 former Salvadoran army officers with crimes against humanity and state terrorism for their role in the murders of six Jesuit priests, their housekeeper, and her sixteen year old daughter in 1989. Montano is one of the former officers named in that indictment.

12. I am familiar with Montano's physical appearance because I have seen several photographs of Montano. I have seen the photographs on his Salvadoran passport and Massachusetts driver's license. In addition, Montano has provided a photograph in connection with each TPS Application he has submitted as well as the photograph maintained by CIS in Montano's Alien File. I have also seen a widely-published Associated Press photograph ("the AP photo") depicting Montano and three other men in

military uniform.  The text accompanying the AP photo states that the photograph was taken in July 1989 and identifies Montano as "Col. Inocente Orlando Montano, then [Salvadoran] public safety vice minister."  The text also identifies the other three men in the AP photo by name, rank, and official government title.

13.  In addition, I am familiar with Montano's signature, which is very distinctive.  Because Montano has such a distinctive signature, it is obvious that the same person who signed Montano's passport also signed each of the Forms I-821 submitted in his name.

14.  Moreover, numerous articles and scholarly publications have cited a report published in 1990 by the Arms Control and Foreign Policy Caucus of the United States Congress, entitled "Barriers to Reform: A Profile of El Salvador's Military Leaders."  According to an article published in the National Catholic Reporter on December 10, 2004, "Barriers to Reform" identifies Colonel Inocente Orlando Montano as the Salvadoran Vice Minister for Public Security.  The article is accompanied by a photograph of a man the caption identifies as Inocente Orlando Montano.  The man depicted in that photograph is the man I know to be Montano.

15.  In addition, I have spoken with a United States citizen who spent several years in El Salvador in the 1980s and 1990s, during which time he met on numerous occasions with El Salvadoran

military personnel.  I have also corroborated through independent means that this individual was in El Salvador during that time period and was in a position to meet with members of the El Salvadoran military.  I showed him the AP photograph discussed above (without showing him the caption or any text accompanying the photograph) and asked him if he recognized them by name.  He said he did and that he had met with each of the men depicted in the photograph.  This individual correctly identified Montano.  He also named each of the other men depicted in the photograph.  The names he provided were those reported in the text accompanying the AP photograph.

16.  Further, I have seen two articles published in Salvadoran newspapers in 1989 and 1990 and archived by the U.S. Library of Congress, both of which articles include photographs of Montano in military uniform.  One of the articles, published in "La Prensa Grafica," refers to Montano as a member of the military high command.

17.  On August 19, 2011, I and other ICE agents conducted a search of Montano's Everett, Massachusetts residence.  Among other things, we found a 1983 identification card from a Salvadoran business identifying Montano as a Lieutenant Colonel in the Armed Forces of El Salvador.  Following the search, I and other agents met with and interviewed of Montano.  After being advised of his rights, and consistent with what we discovered

during the search, Montano admitted among other things that he had in fact been a member of the Armed Forces of El Salvador, from 1963 to 1994. He also admitted that he held the rank of Colonel and served at one time as the Salvadoran Public Safety Vice-Minister. With respect to his most recent TPS Application dated August 27, 2010, Montano admitted that he had read all of the questions and reviewed all of his answers before signing and dating it.

18. Based on the foregoing, I believe there is probable cause to believe that Inocente Orlando Montano, on or about August 27, 2010, knowingly subscribed as true false statements with respect to a material fact in an immigration application, or knowingly presented an immigration document containing such false statements, in violation of 18 U.S.C. § 1546(a).

I certify that the foregoing is true and correct. Executed at Boston, Massachusetts, this 22ND day of August, 2011.

Thomas Brian Andersen
Special Agent
U.S. Dept. of Homeland Security
Immigration and Customs Enforcement

Sworn to before me this 22d day of August, 2011 under the pains and penalties of perjury, at Boston, Massachusetts.

Judith G. Dein
Chief United States Magistrate Judge